IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 12, 2010 Session

## IN RE TYRUS V.

**Appeal from the Juvenile Court for Davidson County**
**No. 9619-22886      Max D. Fagan, Judge**

**No. M2009-00493-COA-R3-JV - Filed August 18, 2010**

Mother appeals the trial court's change of custody of the parties' minor child to Father, challenging the court's best interest determination. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Elizabeth A. Garrett, Nashville, Tennessee, for the appellant, Katherine S.

Tyrus I.V., Antioch, Tennessee, Pro Se.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Tyrus V., born in 1995, is the minor child of Tyrus I.V. ("Father") and Katherine S. ("Mother"). Mother was designated the primary residential parent in a court order soon after Tyrus V.'s birth. Father received visitation.

Father filed a Petition to Modify Child Support and Enforce Visitation Order on May 8, 2007. In the petition, Father asserted that his child support obligation of $439.00 per month, which was set on January 12, 2005, should be modified because he lost his job and was earning significantly less with his new employer. Father noted that he was enrolled in school full time and had seventy-two hours left to obtain his bachelor's degree. Additionally,

Father's petition stated that Mother had willfully withheld visitation from Father, "effectively alienating the minor child from the Father," and prayed that visitation be enforced.[1]

On June 18, 2007, the court entered an order finding that there was not a significant variance between the amount of support Father was ordered to pay and the amount of support he would be ordered to pay under the Child Support Guidelines.[2] The court also found that Father's child support payments were in arrears in the amount of $30,540.57 as of May 31, 2007. The court ordered Father to begin paying an additional $50.00 per month toward that debt starting on June 15, 2007.

On September 21, 2007, Mother filed a Petition for Contempt against Father for failure to comply with an order for child support.

On October 18, 2007, Father filed a Petition for Change of Custody, alleging that a material change of circumstances existed which warranted a change of custody. Father asserted the following with regard to a material change in circumstances: "poor attendance and educational neglect issues concerning the minor child"; "lack of medical attention of the minor child by the Mother"; "minor child lives in an overcrowded house with the Mother, with whom he shares a room, and several other people, seven in all"; and "Mother does not maintain consistent employment and does not have the ability to properly care for the minor child and tend to all of his needs." Father prayed that he be awarded primary custody of Tyrus V. or, in the alternative, that there be a modification of the current visitation schedule that would allow for increased visitation.

On November 13, 2007, Mother filed an Amended Petition for Contempt against Father for "willfully refusing to pay his child support obligation as ordered and for failing to provide health insurance coverage" for Tyrus V. Mother asserted that Father was in criminal and civil contempt of court.

In an order dated December 21, 2007, Father was found guilty of eighteen counts of criminal contempt for failure to pay child support. The issue of whether Father was in willful

---

[1] According to Father's petition, the court had previously awarded Father visitation with Tyrus V. every other weekend from Friday at 5:00 a.m. through Monday at 7:00 a.m., Mondays from 5:30 p.m. to 8:30 p.m. on weeks that Father does not have weekend visitation, Thursdays from 5:30 p.m. until Friday morning drop-off at school on weeks that Father does not have weekend visitation, one month summer visitation, alternating holidays, and one week at Christmas.

[2] The Child Support Worksheet reflects a presumptive child support order of $578.00 for Father, for an actual variance of $49.24. The amount required for a significant variance to exist was $65.85.

criminal contempt for failure to acquire and maintain health insurance for Tyrus V. was reserved.

On January 8, 2008, Father filed a petition to hold Mother in criminal contempt alleging that she had failed to allow him court-ordered visitation with Tyrus V.

A hearing on Father's petitions was held on March 26, 2008. In its April 16, 2008 order, the court ruled that legal custody of Tyrus V. would remain with Mother and that the current visitation schedule would remain in effect. Father requested a rehearing regarding the matters of child support, visitation, and custody, as well as a hearing on his petition for contempt.[3]

The hearing on Father's petitions was held on September 15, 2008, November 12, 2008, and January 23, 2009. The court issued its final order on February 10, 2009. The court found that Father met the burden of proving that a material change of circumstances existed, including "proof that the minor child's progress in school continues to digress, the Mother continues to neglect the educational and counseling needs of the minor child and the Mother has failed to adhere to the prior orders of this Court concerning truancy and visitation matters concerning the minor child." The court discussed each of the ten factors listed under Tenn. Code Ann. § 36-6-106 in determining that a change of custody was in the best interest of Tyrus V. Father was named the primary custodial parent of Tyrus V., and Mother was granted visitation.[4] Mother was ordered to pay Father child support in the amount of $81.70 per week, beginning January 30, 2009. Additionally, the court found Mother guilty of four acts of willful, criminal contempt with respect to withholding holiday parenting time of Father in 2007.

STANDARD OF REVIEW

Our review of the trial court's findings of fact is de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Marlow v. Parkinson*, 236 S.W.3d 744, 748 (Tenn. Ct. App. 2007). "A determination of child custody and visitation often hinges on subtle factors such as the parents' demeanor and credibility during the trial

---

[3] The April 16, 2008 order stated the following: "Pursuant to T.C.A. § 37-1-107, this order becomes the final order of the Juvenile Court if an appeal is not filed within five days . . . . This order may be appealed to the Juvenile Court Judge by filing a request for rehearing with the Juvenile Court Clerk."

[4] Mother was granted parenting time every other weekend from Friday at 6:00 p.m. to Sunday at 6:00 p.m., as well as holiday and summer time.

proceedings." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007) (citing *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996)). We "give great weight to the trial court's assessment of the evidence because the trial court is in a much better position to evaluate the credibility of the witnesses." *Boyer v. Heimermann*, 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007).

ANALYSIS

It is well-established that in order to modify a parenting plan to change the primary residential parent, the trial court must apply a two-part analysis: the court must find that "both a material change of circumstances has occurred and a change of custody is in the child's best interests." *Kendrick*, 90 S.W.3d at 575. Tenn. Code Ann. § 36-6-101(a)(2)(B) is the relevant statutory provision as to what constitutes a material change of circumstance in the context of a custody change:

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

In making its best interest determination, the court is to consider all relevant factors, including the following set forth in Tenn. Code Ann. § 36-6-106(a): (1) the love, affection, and emotional ties between the parents and the child; (2) the disposition of the parents to provide the child with food, clothing, medical care, education, and other necessary care, as well as the degree to which a parent has been the primary caregiver; (3) the importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; (4) the stability of the family unit of the parents; (5) the mental and physical health of the parents; (6) the home, school, and community record of the child; (7) the reasonable preference of the child; (8) evidence of physical or emotional abuse to the child, to the other parent, or to any other person; (9) the character and behavior of any other person who resides in or frequents the home of a parent and the person's interactions with the child; and (10) each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each parent to facilitate and encourage a close and continuing parent-child relationship between the child and both parents, consistent with the best interest of the child.

On appeal, Mother asserts that the trial court erred in determining that a modification of custody was in the best interest of Tyrus V. Specifically, Mother claims that the court erred in considering the sexual orientation of a resident in the home of Mother in its best interest analysis. Mother does not challenge the court's finding that there was a material change in circumstance.

In making its best interest determination, the trial court considered each of the statutory factors as follows:

(1) As it relates to the love, affection and emotional ties existing between the parents of the child, the Court finds that when this case started, the Mother had the advantage in this area. However, the Court finds that since the Father has been afforded with the opportunity to establish a bond with the child during the course of this case, the parties are now equal with respect to the amount of love, affection and emotional ties with the minor child in this cause.

(2) With respect to the disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which each parent has been the primary caregiver, the Court finds that there are problems and concerns as it relates to the Mother in meeting the education and continuing counseling needs of the minor child. Specifically, the child is failing in school and his grades have continued to decline. The Mother has repeatedly caused the child to miss school, be late to school and/or to be dismissed from school early, without any plausible explanation. Further, the Mother provided [the] minor child with a tutor, who testified in court; however, the Court finds that such tutoring has been ineffective and that the tutor's insight as to the needs of the child was not as in depth as it should have been. The Court further finds that while the Mother did initiate counseling sessions for the minor child, she failed to continue the sessions, after the initial intake process. The Father[,] however, has maintained a consistent counseling schedule with the counselor since the last Order of this Court, designating him to do so and has made consistent efforts to work with school personnel to both determine and meet the education needs of the minor child.

(3) With respect to the third factor, the importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment, the Court has no concerns with either party in this area, with the exception that the Court is concerned with testimony from the Father that a male foster child in the Mother's home is of a homosexual nature. The Court;

however, is not concerned with the number of people residing in the Mother's home.

(4) The Court finds that both parents are equal as it relates to the stability of the family unit of the parents.

(5) There was no testimony with respect to the mental and physical health of the parents.

(6) The Court finds that with respect to the home, school and community record of the child, the school record is substandard.

(7) The Court did hear testimony from the minor child.

(8) The Court finds that there was no testimony with the respect to any evidence of physical or emotional abuse to the child, other parent or any other person.

(9) As stated above under factor number three (3), the Court is concerned with testimony from the Father that a male child in the Mother's home is of a homosexual nature.

(10) Lastly, the Court finds that the Mother has consistently interfered with the parenting time of the minor child and the Father and that the Mother has neglected her parenting responsibilities as it relates to tending to the educational and counseling needs of the minor child and the Court reasonably believes that the Mother will continue to do the same. Therefore, the Court finds that the Mother's potential for future performance of parenting responsibilities as it relates to the educational and counseling needs of the minor child is limited and that the Mother will not facilitate and encourage a close and continuing parent-child relationship between the Father and [the] minor child, consistent with the best interest of the minor child. Of all the factors, the Court has weighed this factor the most in making its determination herein.

Based upon its analysis of the statutory factors, the court concluded that "in the best interest of the minor child, the Father's Petition to Change Custody is well taken and the same is hereby granted."

On appeal, Father agrees that factors 1, 4, 5, 7, and 8 either did not apply or were not persuasive in the court's determination. Thus, the relevant factors, and those challenged by Mother on appeal, are factors 2, 3, 6, 9, and 10.

Mother first asserts that the trial court erred in considering the sexual orientation of a resident in the home of Mother under factors 3 and 9. Mother insists that "there was no proof that [Tyrus V.'s] environment was not stable or satisfactory other than one comment made by Father regarding his concern that a foster child living in the home having homosexual tendencies." Mother asserts that the trial court is "using the homosexuality of an individual as a *per se* basis for concern for the minor child" and "punishing Mother for the sexual orientation of a foster child under the care of Mother's parents." Mother cites *Berry v. Berry*, No. E2004-01832-COA-R3-CV, 2005 WL 1277847, at *4 (Tenn. Ct. App. May 31, 2005), for the proposition that "[h]omosexuality and its effects on children as they mature is not of such a nature where judicial notice is appropriate."

Mother is correct that no evidence was presented of any negative effect on the minor child due to the foster child residing in the same home as Tyrus V. However, Mother overstates the court's consideration of the foster child's alleged homosexuality. In its discussion of factor 3, the court first noted that it generally had "no concerns with either party in this area." In its discussion of factors 3 and 9, the court stated only that it was "concerned with testimony from the Father" that a foster child residing with Tyrus V. is of a homosexual nature. Additionally, the trial court's findings with regard to the other statutory factors, particularly factor 10, are sufficient to uphold its best interest determination.

With regard to factor 2, Mother states that, for the first thirteen years of Tyrus V.'s life, she was the primary caretaker, with at least a five-year period where Father lived in another state and did not visit or pay child support. Mother asserts that "at least she was there for the minor child and she did make efforts to help with his education." Mother notes that she hired a Davidson County teacher to tutor Tyrus V. while Father's efforts were "limited to the very recent period of his filing of the petition to change custody and by order of the Court regarding the counseling." Indeed, it is clear from the testimony that Father's relationship with Tyrus V. improved over time. Tyrus V.'s guardian ad litem commented to that effect at trial, noting that her "initial impressions of [Father] were of a man who had just become involved in the child's life and owed a bunch of child support," while Mother was trying to address the guardian ad litem's concerns. The guardian ad litem stated that "those tables have completely turned." She further stated that she initially "thought [Tyrus V.] would always have a hard time making a relationship with his father," but that now "he very much enjoys spending time in his father's home."

Mother does not refute the trial court's finding that she has problems "in meeting the education and continuing counseling needs of the minor child." Both testimony and exhibits from the record reflect that Tyrus V. struggled to pass his classes in school, was consistently graded "below proficient" in standardized testing, and was late and tardy dozens of times each school year. The trial court stated the following from the bench:

> There's been overwhelming testimony about the woeful difficulties that Tyrus is having in his education. The testimony has been that he has been primarily dependent upon his mother to get him to school, to get him to school on time, to make sure that he is able to attend to his education. And it appears that we have come up considerably short on that factor. On the other hand, the testimony has been that when Tyrus has been in his father's care that he has been diligent about making sure that he gets to school on time, that he helps him with his homework, has his lessons done and things of that sort.

To her credit, Mother did hire a tutor to help Tyrus V. However, the trial court stated that "her insight into Tyrus was [not] as indepth as it should have been" and observed that it was unclear whether "her help in tutoring with Tyrus has been particularly effective, especially with her not being aware of his academic status, or speaking with his teachers and things of that sort." With regard to counseling, the testimony showed that Mother set up the initial appointment for an intake interview and attended one other appointment, but then failed to show up thereafter. Father was then tasked with taking Tyrus V. to the appointments, which he did.

With regard to factor 6, Mother admits that Tyrus V.'s school record was substandard but claims she tried to the best of her abilities to help her son. Mother outlines the steps she took to meet Tyrus V.'s educational needs in her brief:

> Mother took the child to the library to use a computer, read with him, and helped him with his homework. Mother asked her niece to help tutor the minor child in third grade and she always consulted with his teachers for advice. After a meeting with the minor's teachers, Mother hired a tutor, Tiffany McKee, a language arts teacher with Metro Nashville public schools for the minor child in the fall of 2007.

As discussed with regard to factor 2, Mother presented no evidence or testimony to rebut the court's finding with regard to Tyrus V.'s substandard school record. We have already noted the weight with which the trial court regarded Ms. McKee's testimony.

With regard to factor 10, Mother denies that she has consistently interfered with Father's parenting time and insists that she wants Tyrus V. and Father to establish a relationship, noting that she hired a counselor "to help in assisting the transition from a father who is not involved to a father who is involved in his child's life." There is no evidence to support Mother's contention that she has not consistently interfered with Father's parenting time. Tyrus V.'s guardian ad litem stated at trial that "[Mother] continuously, much to my regret, ignores this Court's Orders [regarding visitation]." Father testified that he had no parenting time during holidays in 2006 and 2007, and the court found Mother guilty of four counts of contempt for withholding holiday parenting time in 2007. Additionally, as discussed with regard to factor 2, Mother again fails to rebut the court's finding that she "has neglected her parenting responsibilities as it relates to tending to the educational and counseling needs of the minor child" or the court's determination that she will continue to do the same. In this instance, the court properly weighed factor 10 the most heavily in making its best interest determination, and we conclude that that factor is sufficient to uphold the court's decision.

Given the testimony at trial from both parents and other witnesses, we conclude that the evidence does not preponderate against the trial court's finding that a change in custody was in the best interest of Tyrus V.

CONCLUSION

The judgment of the trial court is affirmed. Costs of appeal are assessed against the appellant, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

-9-