**Susan MARLOW**

v.

**Dan PARKINSON.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Dec. 6, 2006 Session.

April 23, 2007.

Permission to Appeal Denied by Supreme Court Sept. 17, 2007.

---

Dana C. McLendon III, Franklin, Tennessee, for the appellant, Dan Parkinson.

Virginia Lee Story, Franklin, Tennessee, for the appellee, Susan Marlow.

**OPINION**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and WILLIAM B. CAIN, J., joined.

The father of three minor children appeals the trial court's modification of the parenting plan, contending the evidence preponderates against the trial court's findings of fact and the conclusions based thereon. He also seeks to set aside a permanent injunction that compels him to restrain his new wife from "interfering with the parenting of the children." We affirm the modification of the parenting plan but vacate the injunction against the father that compels him to restrain his wife from engaging in parenting activities.

Susan Marlow, Mother, and Dan Parkinson, Father, are the parents of three children, ages seventeen, sixteen, and nine. The Permanent Parenting Plan, which went into effect when the parties were divorced in 2001, provided *inter alia* that the children would spend three days a week with Father and four days a week with Mother.[1] In August 2004, the two older children expressed frustration with going back and forth between their parents' homes and requested that they be allowed to reside with Father during the week so they could attend the school in his school district. The parents voluntarily entered into mediation following which they agreed to allow the children to reside with Father during the week to facilitate the children's school schedule. The parties implemented this new arrangement in August of 2004. Although the new arrangement was implemented in August of 2004, the trial court did not approve the proposed amended parenting plan until December of 2004. The 2004 Amended Parenting Plan was in effect when the competing petitions at issue were filed and is the subject of this appeal.

Problems with the amended plan began to develop in January of 2005. The first major sign of trouble was when the oldest son returned to live with his mother the first week of January 2005 and has ever since refused to visit his father. The daughter developed a hostile attitude toward her mother, became ill-tempered on numerous occasions with her mother, and expressed a desire to stay at her father's house. Subsequent e-mails from the daughter reveal an alienation from her mother as early as January 2005, and by March, the daughter was refusing to visit with her mother. The only bright spot was the youngest son continued to spend residential time with each parent pursuant to the amended plan.

As the days and weeks went by, the parenting relationship between Mother and Father became increasingly strained. One of the catalysts of the strained relationships was the active involvement in the lives of the children by Father's new wife, Mrs. Parkinson. She began to take an active role in the children's lives, spending

---

1. The 2001 Parenting Plan is not in the record before this Court, but the four days with Mother and three days with Father is consis-tent with the parties' representations in their briefs to this Court.

considerable time with the daughter and the youngest son, signing their report cards, and volunteering as a room mom at school. Mother perceived Mrs. Parkinson's involvement with the children as a threat to her role as their mother and as an effort to alienate her from her children.[2]

After becoming increasingly frustrated with an openly hostile relationship with Father and Mrs. Parkinson and concerned for the welfare of her children, Mother filed a Petition for Modification of Parenting Plan on April 1, 2005. Father promptly responded by filing a Counter-Petition to modify the amended parenting plan. Shortly thereafter, Mother filed a Motion requesting leave to take the daughter to a psychologist, and the parties entered into an Agreed Order for Mother to do so. After the daughter's first visit, the daughter refused to return after determining the objective of the psychologist was to heal the rift with her and Mother.

As the relationship between the parties and two of their children continued to deteriorate, Mother filed a Petition for a Restraining Order to enjoin Father from harassing Mother and to enjoin Father from allowing Mrs. Parkinson to interfere with Mother's relationship with the children. The trial court granted the Petition and entered the restraining order Mother sought on June 30, 2005.

Following a full evidentiary hearing in January of 2006, the trial court made several findings of fact including that the hostility among the parents, step-parents, and children had developed since the entry of the Amended Parenting Plan in December of 2004, and that the joint custody arrangement created by the Amended Parenting Plan of December 2004 was completely unworkable. Some of the significant findings by the trial court include, *inter alia*, that Father had abdicated his parenting responsibilities to his new wife, Mrs. Parkinson; that Mrs. Parkinson created the rift between the daughter and Mother; and that Mrs. Parkinson was attempting to alienate the youngest child from Mother. Specifically, the trial court found that Mrs. Parkinson's goal was "to assume the role of mother for both Brandon and Meghan. Her conduct and words are crafted to give the children the impression their mother is irrelevant, and it is she who is in charge of their lives." The trial court also stated that it was particularly concerned by the "self-centered behavior and character of Mrs. Parkinson and the willingness of Mr. Parkinson to allow her to alienate the children from their mother by trying to assume that role for herself."

Based on these and other findings, the trial court concluded that a material change in circumstances had occurred warranting modification of the parenting plan, and that it was in the children's best interest to designate Mother as the primary residential parent with sole responsibility for making major decisions regarding the children.[3] Father was awarded visitation with the two youngest children, Meghan and Brandon, Thursday night to Monday night every other week. He was additionally awarded fourteen days of vacation ev-

---

2. *Indeed, the record contains evidence of several e-mails between Mother's residence and the Parkinson residence that do not paint Mother or Mrs. Parkinson in a flattering light. There are also e-mails from the daughter highlighting her bad attitude and immaturity towards her mother.*

3. *The trial court's Order provided that "each parent shall make decisions regarding the day-to-day care of the children while they are residing with that parent, including any emergency decisions affecting the health or safety of a child. All major decisions regarding the children shall be made by the mother."*

ery summer, and visitation every Christmas for the last half of Christmas day through the evening of December 31, and visitation every other year during the children's fall and spring breaks. Due to the tensions between Father and the seventeen year-old son, Bryan, the trial court crafted a different visitation schedule concerning Bryan, which included visitation with Father one night a week[4] until the end of the school year, and thereafter, visitation every other Saturday.[5]

The trial court also converted the restraining order into a permanent injunction, compelling Father to restrain Mrs. Parkinson from interfering with Mother's parenting responsibilities, which included prohibiting Mrs. Parkinson from attending school parties with the children, volunteering as a room mom, communicating with Mother, signing report cards, e-mailing the children while they are with Mother and sending notes with the children to Mother's home.

Father appeals contending the evidence preponderates against the trial court's findings upon which it based the new parenting plan, and that the trial court abused its discretion in the manner and to the extent it modified the parenting plan. Father also appeals the injunction against him concerning Mrs. Parkinson's activities.

## STANDARD OF REVIEW

■ This court reviews custody and visitation decisions *de novo* with a presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise. *Kendrick v. Shoe-*

make, 90 S.W.3d 566, 569 (Tenn.2002); *Nichols v. Nichols,* 792 S.W.2d 713, 716 (Tenn.1990). Moreover, appellate courts are reluctant to second-guess a trial court's determination regarding custody and visitation. *Parker v. Parker,* 986 S.W.2d 557, 563 (Tenn.1999). This is because of the broad discretion given trial courts in matters of child custody, visitation and related issues. *Id.; see also Nelson v. Nelson,* 66 S.W.3d 896, 901 (Tenn. Ct.App.2001). Custody decisions often hinge on subtle factors, such as the parents' demeanor and credibility during the proceedings. *Adelsperger v. Adelsperger,* 970 S.W.2d 482, 485 (Tenn.Ct.App.1997). Accordingly, trial courts have broad discretion to fashion custody and visitation arrangements that best suit the unique circumstances of each case. *Parker,* 986 S.W.2d at 563.

■ Furthermore, it is not the role of the appellate courts to "tweak [parenting plans] . . . in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge,* 42 S.W.3d 82, 88 (Tenn.2001). This is particularly true when no error is evident from the record. *Id.* Thus, a trial court's decision regarding custody or visitation will be set aside only when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Id.*

## MODIFICATION OF THE 2004 AMENDED PARENTING PLAN

■ When a petition to modify a parenting plan is presented, the threshold issue

---

4. The court mandated that Mrs. Parkinson could not be present during this weekly visit between Bryan and Father.

5. The trial court determined that because Bryan was 17 years old, the court would consider his expressed preference of staying with his mother. The court, however, also determined that despite Bryan's expressed desire to not stay at his father's house, Bryan would benefit from a relationship with his father. As for the holiday and vacation schedule, the trial court's Order only used the word "children" when it established those schedules.

is whether there has been a material change in circumstances since the plan went into effect. *See Kendrick,* 90 S.W.3d at 570 (citing *Blair v. Badenhope,* 77 S.W.3d 137, 150 (Tenn.2002)). If a material change in circumstances has occurred, it must then be determined whether modification of the plan is in the best interest of the children. *Kendrick,* 90 S.W.3d at 570; *Blair,* 77 S.W.3d at 150.

The trial court found, and both parties agree, that a material change in circumstances occurred since the 2004 Amended Plan went into effect due, in part, to the rift between Mother and daughter, and the rift between Father and the oldest son. The record clearly supports this finding and the trial court's finding that Mother and Father could no longer work together. Therefore, joint custody with joint decision-making was no longer viable and a different plan was necessary. Accordingly, it was necessary to modify the 2004 Amended Plan.

When the court considers the modification of a parenting plan, the focus is to be on the best interest of the children. Tenn. Code Ann. § 36–6–106. Relevant factors to be considered, when applicable, include:

(1) The love, affection and emotional ties existing between the parents and child;

(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that where there is a finding, under § 36–6–106(a)(8), of child abuse, as defined in §§ 39–15–401 or 39–15–402, or child sexual abuse, as defined in § 37–1–602, by one (1) parent, and that a non-perpetrating parent has relocated in order to flee the perpetrating parent, that such relocation shall not weigh against an award of custody;

(4) The stability of the family unit of the parents;

(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;

(7) (A) The reasonable preference of the child if twelve (12) years of age or older;

(B) The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that where there are allegations that one (1) parent has committed child abuse, as defined in §§ 39–15–401 or 39–15–402, or child sexual abuse, as defined in § 37–1–602, against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected thereto. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing

parent-child relationship between the child and the other parent, consistent with the best interest of the child.

Tenn.Code Ann. § 36–6–106.

Father acknowledges that the trial court conducted its best-interest analysis in accordance with Tenn.Code Ann. § 36–6–106 and agrees that a modification was in the best interest of the children; however, he challenges the trial court's findings of fact upon which the modification was based. Specifically, Father contends the evidence preponderates against the finding that (1) he abdicated his parenting responsibilities to Mrs. Parkinson, (2) Mrs. Parkinson created the rift between the daughter and Mother, and (3) Mrs. Parkinson attempted to alienate the youngest child from Mother.

■ The trial court concluded that Father abdicated his parenting responsibilities. We have concluded the evidence preponderates against this finding. The evidence established that Father encouraged Mrs. Parkinson to be involved in the children's lives. The evidence further shows that she became very involved, indeed most assertive, if not divisive in some respects. Mrs. Parkinson's actions notwithstanding, Father remained involved in his children's lives, as is evident from the facts that Father regularly helped the youngest son with his homework and coached his baseball team, regularly sat down to family dinners with his children, attended parent-teacher conferences, and attended church with the daughter and youngest son. Although Father made a serious mistake of judgment in requiring all communications with Mother to go through Mrs. Parkinson, a practice that cannot continue as the trial court has correctly mandated, our review of the record leads us to conclude that the evidence preponderates against a finding that Father abdicated his parenting responsibilities.

The trial court made additional findings that pertain to two important factors to which the trial court correctly gave considerable weight. These factors are: (1) the character and behavior of another person residing in the home of a parent; and (2) each parent's willingness and ability to facilitate and encourage a close and continuing parent-child relationship.

The trial court was justifiably concerned by the "self-centered behavior and character of Mrs. Parkinson and the willingness of Mr. Parkinson to allow her to alienate the children from their mother by trying to assume that role for herself." As the trial court noted, Mrs. Parkinson's goal was "to assume the role of mother for both Brandon and Meghan. Her conduct and words are crafted to give the children the impression their mother is irrelevant, and it is she who is in charge of their lives." The trial court also stated that it was particularly concerned by the "self-centered behavior and character of Mrs. Parkinson and the willingness of Mr. Parkinson to allow her to alienate the children from their mother by trying to assume that role for herself."

There is considerable evidence in the record to support the trial court's findings relative to Mrs. Parkinson's controlling and divisive actions. Therefore, we conclude the evidence does not preponderate against the findings discussed above, to which the trial court gave the most weight.

■ Father next contends the trial court's findings of facts were not sufficient to support the manner in which the trial court modified the parenting plan. This Court has been faced with a number of cases wherein custody and visitation decisions were based upon findings that one of the parents maintained a home that promoted "a loving and nurturing relationship with both parents" while the other parent

did not. *See Varley v. Varley,* 934 S.W.2d 659, 668 (Tenn.Ct.App.1996); *Perez v. Kornberg,* No. M2004–01909–COA–R3–CV, 2006 WL 1540254, at *2 (Tenn.Ct.App. June 5, 2006); *Wright v. Stovall,* No. 01A1–9701–CV–00040, 1997 WL 607508, at *6 (Tenn.Ct.App. Oct. 3, 1997). In such cases, this Court held that where one parent "has attempted to alienate the affections of the children from the other parent, and has attempted to substitute a third person for the other parent, this conduct mitigates in favor of an award of custody to the other parent, in order to preserve the children's relationship with both parents." *Wright,* 1997 WL 607508, at *6. The *Wright* court went on to state that it was "in the best interest of these children that they maintain a loving and nurturing relationship with both parents. In light of the record, we do not believe that such can be accomplished by an award of custody to Wife at this time." *Id.* Although the alienation here was promoted by Mrs. Parkinson, not Father, she resides in the home where the children also reside. Accordingly, her presence is a factor to be considered. *See* Tenn.Code Ann. § 36–6–106(9)–(10).

As we held in *Varley* and *Wright,* it is in the best interests of the children that each parent maintain a household that fosters a loving and nurturing relationship with both parents. Mother has done that, Father has not. In light of the record before us, we have concluded that the trial court did not abuse its discretion in the manner it modified the parenting plan. Accordingly, we affirm the modification of the parenting plan in all respects.

### THE PERMANENT INJUNCTION

■ The trial court issued a permanent injunction, compelling Father to supervise and restrict his new wife's activities concerning the children. The injunction provides in pertinent part:

> [Father] is permanently enjoined from allowing Mrs. Parkinson to interfere with the mother's parenting obligations. Specifically, Mrs. Parkinson will not attend school parties with the children or volunteer as a room parent. She will have absolutely no communication with [Mother]. She will not send notes home with the children. She will not sign report cards and school assignments. She will not send e-mails or call the children while they are at their mother's home. Father and mother will provide all school materials to the other parent leaving homework sheets, notices from school, and other notices regarding extracurricular activities coming home with the child in the backpack so the other parent will clearly have records of all grades, events and activities.

> Failure to abide by the above provisions with be dealt with using the contempt powers of the Court and further restrictions on visitation.

The purpose of restraints on parental conduct is to protect the child. *Hogue v. Hogue,* 147 S.W.3d 245, 251 (Tenn.Ct.App. 2004). The restraints to be placed on a parent should be well defined and "must involve conduct that competent evidence shows could cause harm to the child." *See Bates v. Bates,* No. 03A01–9412–CH–00426, 1995 WL 134907, at *3 (Tenn.Ct.App. March 30, 1995).[6]

---

6. In *Bates,* the trial court's order prohibiting visitation in the presence of the paramour was reversed for there was no showing of harm to the child. *Bates,* 1995 WL 134907, at *3; *see also Smith v. Smith,* No. 03A01– 9603–CV–00078, 1996 WL 591181, at *3 (Tenn.Ct.App. Oct.11, 1996) (sustaining the injunction because the record contained evidence the father's cigarette smoking had jeopardized the child's physical well-being).

If there is competent evidence that shows the conduct at issue could cause harm to the child, then a restraining order or injunction may issue pursuant to Tenn. R. Civ. P. 65.02. *Hogue*, 147 S.W.3d at 251. The injunction, however, must be specific, not general. *Id.* As Tenn. R. Civ. P. 65.02(1) requires, "every restraining order or injunction shall be specific in terms and shall describe in reasonable detail, ... the act restrained or enjoined." *Id.* at 252 (citing Tenn. R. Civ. P. 65.02(1)). Although Tenn R. Civ. P. 65.07 permits "some departure" from the specificity requirements in domestic cases, that departure is not unlimited.[7] *Hogue*, 147 S.W.3d at 252 (citing Tenn. R. Civ. P. 65.07). "More importantly, rules of procedure may not contravene constitutional constraints...." *Hogue*, 147 S.W.3d at 252.

The first sentence reveals a significant deficiency with the injunction, a lack of specificity. It reads: "[Father] is permanently enjoined from allowing Mrs. Parkinson to interfere with the mother's parenting obligations." As we held in *Hogue*, an injunction is deficient if "it fails to satisfy the specificity requirements of Tenn. R. Civ. P. 65.02(1) by not describing the prohibited acts in reasonable detail." *Hogue*, 147 S.W.3d at 255. An injunction that provides no more guidance than to state that one should restrain another from interfering with another's "parenting obligations" is not "specific in terms" and does not "describe in reasonable detail, ... the act restrained or enjoined." *Hogue*, 147 S.W.3d at 255 (citing Tenn. R. Civ. P. 65.02(1)). Accordingly, that aspect of the injunction is overly broad and therefore unenforceable.

The second and subsequent sentences clearly state the sole purpose of the injunction is to restrict the actions of one person, Mrs. Parkinson.[8] Although they should be carefully drafted to avoid obvious pitfalls, injunctions compelling a parent to take affirmative action to ensure that the children reside in a safe environment or that they are not exposed to environments that pose a danger to the child are not unenforceable. To the contrary, there are legions of cases that impose an obligation on a parent to police the activities of others while in the home where the children reside and at other locations when the parent is present with the children. *Hogue*, 147 S.W.3d at 254 (citing *W. Walton Garrett, Tennessee Divorce, Alimony and Child Custody* §§ 24–7, 25–4 (2000)(providing guidance as to appropriate restrictions during visitation)). Injunctions in those cases, however, are tempered by the principle that the party restrained or enjoined must have "the ability to perform the act it is ordered to perform," *see Leonard v. Leonard*, 207 Tenn. 609, 341 S.W.2d

---

7. The domestic relations exception in Tenn. R. Civ. P. 65.07 does not excuse a trial court from compliance with the specificity requirements of Tenn. R. Civ. P. 65.02(1) to describe the prohibited acts in reasonable detail. Further, it does not excuse a trial court from having to determine whether there is sufficient evidence that to permit the right would jeopardize the child and thereby justify the restraint, and from having to limit the scope of the restraint to the evidence presented. *See Eldridge*, 42 S.W.3d at 89 (citing *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn.1988)).

*Hogue*, 147 S.W.3d at 252.

8. For reasons unexplained by the record, Mrs. Parkinson was not directly enjoined from engaging in conduct that was not in the children's best interests. Instead, Father was mandatorily enjoined to police the activities of Mrs. Parkinson. The better practice would be to join Mrs. Parkinson as a party and to issue an appropriate injunction against her, not her husband. Since Mrs. Parkinson was not a party, she was not subject to the injunctive jurisdiction of the trial court, *Henderson v. Mabry*, 838 S.W.2d 537, 541 (Tenn.Ct.App. 1992); however, if she becomes a party, the court would have jurisdiction to issue an injunction against her directly.

740, 743 (Tenn.1960), or, as a corollary to the above, the ability to prevent the act that the trial court has prohibited. They are further tempered by the concept that the restraint should be limited to the parent's home and to places where the parent can control the environment to which the child is to be exposed.

The injunction against Father, however, goes well beyond the concept of controlling the environment to which the child is exposed, such as a parent's home when the child is visiting. It also goes well beyond the concept of controlling the environment to which the child is exposed when the parent is with the child outside of the home. Here, the trial court has mandatorily directed[9] Father to restrict activities of Mrs. Parkinson that may occur outside of Father's home and at times and places when and where Father is not present and/or the children are not present. There is no evidence in the record that Father has the authority or ability to prevent Mrs. Parkinson from engaging in activities that occur outside of Father's home when he is not present.

For the foregoing reasons, we vacate the permanent injunction issued against Father.[10]

### Attorney Fees

Mother seeks to recover her attorney's fees on appeal pursuant to Tenn. Code Ann. § 36–5–103(c), which provides for "reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children. . . ." Tenn.Code Ann. § 36–5–103(c). Because Mother prevailed on the issue concerning the adjudication of the change of custody of the children, we find she is entitled to recover her attorney's fees on appeal. We remand this issue to the trial court to determine the reasonable and necessary fees to which she is entitled.

### In Conclusion

We affirm the judgment of the trial court as it pertains to the parenting plan; however, we respectfully vacate the permanent injunction issued against Father. This matter is remanded for further proceedings consistent with this opinion. Costs of appeal assessed against the parties equally.

---

9. "A restraining order shall only restrict the doing of an act. An injunction may restrict or mandatorily direct the doing of an act." Tenn. R. Civ. P. 65.01.

10. Although we find the injunction unenforceable, should Mrs. Parkinson continue to engage in the conduct the trial court finds adverse to the children's best interests, upon proper application by Mother, the trial court may place additional restrictions on Father's visitation as to when and where visitation may occur and who may be present during visitation. See Suttles, 748 S.W.2d at 429 (holding the right of visitation may be limited, or eliminated, if there is definite evidence that to permit the right would jeopardize the child).