IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 14, 2012 Session

## BETTY JEAN LANGFORD v. JAMES HARVEY HARRISON, JR. ET AL.

**Appeal from the Chancery Court for Bedford County**
**No. 27865     J.B. Cox, Chancellor**

**No. M2011-01647-COA-R3-CV - Filed May 10, 2012**

Following appellant's petition to eject from real property, appellees counterclaimed seeking a declaration of the boundaries between their properties and those of appellant, sole possession of their properties, a permanent injunction against appellant, and damages for libel or slander of title. We affirm the trial court's judgment in favor of appellees and find this appeal to be frivolous.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Jerry Scott, Murfreesboro, Tennessee, for the appellant, Betty Jean Langford.

Ralph McBride, Jr., Shelbyville, Tennessee, for the appellees, Robert S. Neill, Richard Scott Hargrove, Mary Ann Nelson, William Joseph Roberts, and Roy James Roberts.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

This case involves boundary line disputes that have persisted for at least four years. The appellant, Betty Jean Langford ("Ms. Langford"), owns real property that adjoins the real property of the appellees, Mary Ann Nelson, William Joseph Roberts, Roy James Roberts ("the Roberts siblings"), Robert S. Neill ("Mr. Neill"), and Richard Scott Hargrove ("Mr. Hargrove"). The Roberts siblings inherited from their father four tracts of property totaling 98.27 acres. Mary Ann Nelson alone owns by inheritance from her father and by deed from her brothers one of those tracts (25.01 acres). Mr. Neill owns a life estate in approximately 90.5 acres, with a remainder interest to his grandson, Mr. Hargrove.

The current litigation originated with Ms. Langford's July 2009 petition to eject from real property in which she alleged that the Roberts siblings, Mr. Neill, and Mr. Hargrove "through the use of fraudulent means have encroached, encumbered, and trespassed on" her property and "have moved property line markers, filed fraudulent deeds with the Register's Office, and filed fraudulent surveys with the Register's Office." By agreed order entered April 23, 2010, Mr. Neill and Mr. Hargrove were permitted to amend their original answer to add a counterclaim. In their counterclaim, Mr. Neill and Mr. Hargrove asked the court to declare the location of the boundary between their property and Ms. Langford's property, to award them sole possession of the property described in the counterclaim, and to permanently enjoin Ms. Langford from entering it. Mr. Neill and Mr. Hargrove alleged that Ms. Langford "challenged the location of the boundary between [their properties] by coming onto [their property] and painting her name or initials on trees and other objects located on their property, stringing barbed wire between existing trees and fence posts on their property, installing insulators for an electric fence on their property, and posting various signs and notices on their property." The counterclaim further alleged that Ms. Langford published false statements about Mr. Neill and Mr. Hargrove's title to their property and specifically demanded "damages for slander or libel of title consisting of attorney fees, survey expenses, court reporting expenses, and other expenses incurred in connection with th[e] counterclaim."

The April 23, 2010 agreed order also permitted the Roberts siblings to amend their original answer and counterclaim. Their amended counterclaim set forth the same allegations and demands for relief as that of Mr. Neill and Mr. Hargrove, though the Roberts siblings also alleged that Ms. Langford painted her telephone number on their trees, "made disparaging remarks about their title to surveyors, and attempt[ed] to hire a logger to log" their property.

Trial was held on March 14 and May 13, 2011. Ms. Langford did not call a registered land surveyor or any other expert witness to testify; she presented her own testimony, that of her son, and that of her neighbor, Jim Wilson. Witnesses for the Roberts siblings, Mr. Neill, and Mr. Hargrove included the Bedford County Assessor of Property, a logger whom Ms. Langford attempted to hire to log trees that did not belong to her, and registered land surveyors Rex Northcutt, Kurt Johnson, Christopher Bateman, and Steven Caffey.

By final judgment entered May 13, 2011, the trial court dismissed with prejudice Ms. Langford's petition to eject from real property and granted the Roberts siblings, Mr. Neill, and Mr. Hargrove all the relief requested in their counterclaims, including costs and damages for libel and slander of title. The court awarded a $27,384.66 judgment to the Roberts siblings and a judgment for $11,097.22 to Mr. Neill and Mr. Hargrove. These judgments included $522.65 in attorney fees and expenses. The trial court awarded the Roberts siblings,

Mr. Neill, and Mr. Hargrove the sole and complete right to possession of their respective properties and forever barred Ms. Langford and any persons claiming under her from claiming an interest in them.

Additionally, the trial court made the following specific findings: that Ms. Langford's claim "if anything at all relates to a boundary dispute between landowners where ejectment would not be an appropriate remedy" and that "[Ms. Langford] has clearly not carried her burden of proof"; that the Roberts siblings, Mr. Neill, and Mr. Hargrove "are entitled to relief declaring the location of the boundaries between their properties and that of [Ms. Langford], quieting title, granting injunctive relief, [and] awarding damages for libel and slander of title and costs"; that Ms. Langford was not credible; that the Roberts siblings's, Mr. Neill's, and Mr. Hargrove's expert witness, Steven J. Caffey, was credible and that his expert opinion as to the location of the boundaries was "not refuted by any other expert, period, assuming that an owner would have a right to testify as to what their boundaries are"; that "[i]f there is ever a case that lies for an injunction to occur after the judgment of the Court, this is the case"; "that based upon the proof, given my job to weigh the credibility of the witnesses, to apply the expert proof above the lay proof, in this situation there is but one conclusion. Title has been slandered"; that "layer upon top of layer upon top of layer of proof is in favor of the [Roberts siblings, Mr. Neill, and Mr. Hargrove] in this situation"; that "the nature of the conduct that was–that has been born out between these folks, basically at the insistence of [Ms. Langford], merits the Court awarding attorney's fees and survey fees in this situation" and that "there is not a question that that is an appropriate sanction for slander of title which has occurred here"; and that Ms. Langford's claims "are found to be without merit."

Ms. Langford appeals from the May 13, 2011 final judgment.

ISSUES

Ms. Langford presents two issues for review which we restate as follows: (1) The plaintiff erroneously believed Jim Wilson was a land surveyor; and (2) The chancellor rewarded the defendants even though the defendants presented no proof about the values of the defendants' properties.

STANDARD OF REVIEW

Our review of the trial court's findings of fact is de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Kendrick v. Shoemake,* 90 S.W.3d 566, 570 (Tenn. 2002); *Marlow v. Parkinson,* 236 S.W.3d 744, 748 (Tenn. Ct. App. 2007). We review questions of law de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999). We also

"give great weight to the trial court's assessment of the evidence because the trial court is in a much better position to evaluate the credibility of the witnesses." *Boyer v. Heimermann,* 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007).

ANALYSIS

I.

Ms. Langford's neighbor Jim Wilson testified as one of her witnesses at trial. The crux of Ms. Langford's argument as to this issue is the bare allegation that

[a] telephone call by [Ms. Langford's] appellate counsel to the Tennessee Department of Land Surveyors revealed that the only land surveyor in the state of Tennessee named James Wilson lives in Georgia. His Tennessee license expired in 1994 and he has never renewed his license. This Jim Wilson is not a real estate land surveyor and [Ms. Langford] was simply fooled by her neighbor, Jim Wilson.

Ms. Langford's erroneous belief that Mr. Wilson was a registered land surveyor is not a matter for appellate review. We have carefully reviewed the entire record, paying particular attention to the five pages in the trial transcript that constitute Mr. Wilson's testimony and the 138 words that constitute Ms. Langford's argument on this issue. The record contains nothing pertaining to Mr. Wilson's occupation. At trial, Ms. Langford neither asked Mr. Wilson if he was a registered land surveyor nor attempted to qualify him as an expert witness. Tennessee Rule of Appellate Procedure 13(c) permits us to consider only "those facts established by the evidence in the trial court and set forth in the record and any additional facts that may be judicially noticed or are considered pursuant to rule 14." *See also UT Med. Grp., Inc. v. Vogt*, 235 S.W.3d 110, 122 (Tenn. 2007). Ms. Langford has presented no such facts for consideration.

Furthermore, Ms. Langford fails to offer any reason as to why her contention regarding Mr. Wilson's occupation requires appellate relief. Tennessee Rule of Appellate Procedure 27(a)(7) requires the appellant to include in the brief "[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . ." Because Ms. Langford's argument fails to meet this basic requirement and because it references only extrinsic facts, we will not consider it.

II.

The record specifically contradicts Ms. Langford's argument that the Roberts siblings, Mr. Neill, and Mr. Hargrove did not request the damages that the trial court awarded them. Both counterclaims[1] clearly demand "damages for slander or libel of title consisting of attorney fees, survey expenses, court reporting expenses, and other expenses incurred . . . ." The Roberts siblings, Mr. Neill, and Mr. Hargrove requested such relief in their opening statement at trial:

> And we're asking for damages for li[bel] or slander of title . . . . But the only pecuniary loss we've got is the attorney fees and survey expenses in this lawsuit, and cases hold that those are recoverable damages in a li[bel] or slander of title case–attorney fees, deposition costs, court reporter expenses are recoverable as special damages.

These damages were again requested in closing argument:

> We would ask for damages in the form of attorney's fees and surveyor fees for li[bel] and slander of title. We would–I would have to–if the Court rules in our favor, I'll have to prepare an affidavit, get that filed on my attorney fees . . . . And my clients have definitely been damaged in terms of attorney fees and the survey expenses they've had to put out to defend this case, when Ms. Langford doesn't even have an expert on her side that's testified today. And we'd ask for court costs.

Lastly, we have a letter[2] sent by Ms. Langford's trial counsel to her adversaries' counsel which reads in pertinent part, "Pursuant to our recent phone conversation, I have no objection to your affidavits[3] pertaining to the judgment of attorney's fees and costs associated with litigation in the above referenced case." Given this record, Ms. Langford's argument that the

---

[1] Ms. Langford did not file answers to or assert defenses against the counterclaims pursuant to Tenn. R. Civ. P. 12 or otherwise object to the pleadings. The purpose of the pleading requirements in the Tennessee Rules of Civil Procedure is to "provide the parties and the trial court with notice of the claims and defenses involved in the case." *Rawlings v. John Hancock Mut. Life Ins. Co.,* 78 S.W.3d 291, 300 (Tenn. Ct. App. 2001) (citations omitted).

[2] This letter was entered as an exhibit during the May 13, 2011 hearing.

[3] These affidavits, specifically requested by the trial court and filed on May 3, 2011, detail the attorney fees, expenses, and survey costs that the Roberts siblings, Mr. Neill, and Mr. Hargrove incurred.

trial court "awarded [a total of] $38,481.88 to the [Roberts siblings, Mr. Neill, and Mr. Hargrove] without any requests for such amounts . . . " is without merit.

Furthermore, although attorney fees are typically not recoverable absent a contract, statute, or recognized ground of equity, *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn. 1985); *State ex rel. Orr v. Thomas*, 585 S.W.2d 606, 607 (Tenn. 1979), libel[4] of title cases represent an exception to this general rule, and the reasonable litigation expenses incurred to defend such cases may be recovered. *Ezell v. Graves*, 807 S.W.2d 700, 703 (Tenn. Ct. App. 1990). These litigation "expenses may include, *inter alia*, attorney's fees, costs of depositions, and court reporter fees." *Brooks v. Brake*, No. 01A01-9508-CH-00365, 1996 WL 252322, at *4 (Tenn. Ct. App. May 15, 1996).[5]

In its ruling from the bench, the trial court explained that "this case without doubt, given the avalanche of proof and given the nature of the conduct . . . merits the Court awarding attorney's fees and survey fees in this situation" and that such award "is an appropriate sanction for slander of title, which has occurred here." The *Ezell* court rationalized that

> [w]hen a cloud has been cast upon the title to property, . . . [t]he sole way of dispelling another's wrongful assertion of title is by hiring an attorney and litigating. If the defamed party were to simply speak out in denial, as he might with a character attack, he could risk completely losing title by adverse possession. The plaintiffs here were forced into court by the defendants' actions. They were required to hire counsel, take depositions, arrange for court reporters, and run up numerous other expenses. These costs, which represented the only possible course of action to clear their title, flow directly and proximately from the defendants' conduct.

*Ezell* 807 S.W.2d at 703. The Roberts siblings, Mr. Neill, and Mr. Hargrove, like the plaintiffs in *Ezell*, were forced into court by Ms. Langford's actions. As the trial testimony and photographic exhibits clearly illustrate, Ms. Langford's actions included posting large

---

[4] Based upon the evidence adduced at trial, this case involves both libel and slander of title. What we say about libel of title fully applies to slander of title. The action is sometimes referred to as "disparagement of title" and "is a species of a claim for 'injurious falsehood.'" *Phillips v. Woods*, E2007-00697-COA-R3-CV, 2008 WL 836161, at *6 n.4 (Tenn. Ct. App. Mar. 31, 2008).

[5] In *Brooks*, the trial court awarded the plaintiffs attorney fees, one half of the survey cost, and witnesses' expenses incurred. However, this court remanded the case to the trial court for recalculations of the plaintiffs's damages because it was "unable to reconcile the evidence with the trial court's findings regarding the amount of damages which should [have been] awarded."

"keep out" signs and installing electrical fencing on Mr. Neill and Mr. Hargrove's property, reporting Mr. Hargrove to the police for trespassing,[6] repeatedly telling the Bedford County Property Assessor and several surveyors that the Roberts siblings, Mr. Neill, and Mr. Hargrove had stolen her property and had filed fraudulent deeds, and, by her own admission, painting her name, initials, and "keep out L" on numerous trees and rocks on the Roberts siblings' property. In sum, but for Ms. Langford's actions (including, of course, filing the original petition to eject), challenging the Roberts siblings', Mr. Neill's, and Mr. Hargrove's titles to their property, they would not have incurred actual pecuniary loss in the form of attorney fees, survey fees, court costs, and other expenses. Because it is established that these actual pecuniary losses are recoverable as damages in cases such as the one before us, we affirm the trial court's award of $27,384.66 to the Roberts siblings and $11,097.22 to Mr. Neill and Mr. Hargrove.

III.

Lastly, we consider the Roberts siblings', Mr. Neill's, and Mr. Hargrove's requests for damages for a frivolous appeal. "When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may . . . award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal." Tenn. Code Ann. § 27-1-122. An appeal is considered frivolous when it appears the appellant had no reasonable chance of success. *Liberty Mut. Ins. Co. v. Taylor,* 590 S.W.2d 920, 922 (Tenn. 1979). "Parties should not be forced to bear the cost and vexation of baseless appeals." *Young v. Barrow*, 130 S.W.3d 59, 66 (Tenn. Ct. App. 2003); *see also Davis v. Gulf Ins. Grp.,* 546 S.W.2d 583, 586 (Tenn. 1977); Jackson *v. Aldridge,* 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999); *McDonald v. Onoh,* 772 S.W.2d 913, 914 (Tenn. Ct. App. 1989). Based upon the

---

[6] Mr. Hargrove explained as follows:

Q. Now has the sheriff or the deputies been called out to your place?
A. Yes.
Q. How often have they been called out to your place?
A. It's been three or four times.
Q. And what did you do when they came to your place?
A. They try to get me for trespassing.
Q. And what was your response?
A. I showed them my deed.
Q. Okay. Did you show them your survey?
A. I showed them my deed. Yes, survey, yes.
Q. So you have to carry your survey with you when you go out on your property?
A. I got one on every vehicle–four wheelers, trucks, cars.
Q. You always carry your survey around with you?
A. Me and my little boy both.

record and the filings in this court, we find the appellant had no reasonable chance of success on appeal. We, therefore, remand to the trial court for a determination of appropriate damages consisting of the Roberts siblings', Mr. Neill's, and Mr. Hargrove's attorney fees and reasonable expenses incident to the appeal.

CONCLUSION

The trial court's judgment is affirmed and the case is remanded. Costs of appeal are assessed against Betty Jean Langford, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE