# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs March 4, 2013

## EARL GREENWOOD v. CHRISTI PURRENHAGE

**Appeal from the Juvenile Court for White County**
**No. JU1548     Sammie E. Benningfield, Jr., Judge**

**No. M2012-00422-COA-R3-JV - Filed March 26, 2013**

Father seeks additional time with the children, alleging that a failed attempted reconciliation created a material change in circumstances. The trial judge found no material change in circumstances. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, M.S., P.J., and RICHARD H. DINKINS, J., joined.

Billy K. Tollison, III, Sparta, Tennessee for the appellant, Earl Greenwood.

Ricky L. Jenkins, Sparta, Tennessee for the appellee, Christi Purrenhage.

## MEMORANDUM OPINION[1]

Earl Greenwood ("Father") sought to have the permanent parenting plan modified to increase his time with his children. Christi Purrenhage ("Mother") opposed the petition and filed a counter-petition seeking a modification to decrease his time.

Father and Mother never married, but produced two children, Tyler, born in 2001, and Tori, born in 2002. Their relationship was apparently never a smooth one. Between the

---

[1]Tenn. R. Ct. App. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

births of the children, a safety plan order was issued which arose from instances of domestic violence and a violation of an order of protection.[2]  In December 2002, the Juvenile Court of White County placed the children in the custody of the Department of Children's Services due to continuing domestic violence incidents.[3]  Eventually, custody was returned to the parents and a permanent parenting plan was developed.[4]  Mother was named the primary residential parent and Father was to have the children from 2:30 to 6 p.m. on Tuesdays and Wednesdays and every other weekend.

The parents lived together again in 2005, and again from 2008 to 2010.  They did not follow the parenting plan during the time they resided together, but resumed following the plan when they separated.  Mother did agree to adjust the plan by switching Father's weekday evening time from Tuesday and Wednesday to Wednesday and Thursday to allow Father to attend the Tuesday night horse sale.  Mother also sometimes granted Father additional time with the children not required by the parenting plan.

Father filed a petition to modify the parenting plan on November 30, 2010, approximately a month after the parents separated for the last time.  Father alleged that a material change of circumstances had occurred – that the parties had lived together and not applied the parenting plan as ordered.  The petition sought to have the children live with Father every other week.  Mother eventually filed a counter-petition to discontinue the Father's visitation during the school week.  The court held a hearing on October 5, 2011 on Father's petition and found that there had been no material change of circumstances.  Mother dismissed her petition.  Father appealed.

STANDARD OF REVIEW

Our review of the trial court's findings of fact is de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Marlow v. Parkinson*, 236 S.W.3d 744, 748 (Tenn. Ct. App. 2007). Determinations regarding custody and visitation "often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves." *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). We "give great weight to the trial court's assessment of the evidence because the trial court is in

---

[2]The April 2002 order recites that, in the most recent incident, Ms. Purrenhage was arrested for domestic violence and Mr. Greenwood was arrested for violating an order of protection.

[3]The parents were residing together at the time.

[4]On April 6, 2004, a parenting schedule was ordered.  In an order entered July 9, 2004, the Juvenile Court found that both parents had complied with all the requirements of the safety plan and closed the case.

a much better position to evaluate the credibility of the witnesses." *Boyer v. Heimermann*, 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007). Moreover, trial courts necessarily have broad discretion to make decisions regarding parenting arrangements to suit the unique circumstances of each case. *See Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *Chaffin v. Ellis*, 211 S.W.3d 264, 286 (Tenn. Ct. App. 2006). Therefore, "a trial court's decision [on visitation] will not ordinarily be reversed absent some abuse of that discretion." *Eldridge*, 42 S.W.3d at 85 (quoting *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988)). "An abuse of discretion can be found only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Id*. at 88.

ANALYSIS

Tenn. Code Ann. § 36-6-101(a)(2)(C) provides:

> If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

This statute "sets a very low threshold for establishing a material change of circumstances. Indeed, merely showing that the existing arrangement has proven unworkable for the parties is sufficient to satisfy the material change of circumstance test." *Rose v. Lashlee*, No. M2005-00361-COA-R3-CV, 2006 WL 2390980, at *2 n.3 (Tenn. Ct. App. Aug. 18, 2006).

Although the threshold for finding a material change under Tenn. Code Ann. § 36-6-101(a)(2)(C) is a low one, there is still a threshold. Father argues that the fact that the parties resumed living together and abandoned the parenting plan for a period of time was sufficient to show a material change of circumstances. This alleged material change involved Mother giving Father more time with the children than the parenting plan required since the parents were living together and, afterward, Mother changing the weekday visitation to accommodate Father's schedule.

After hearing the testimony of Father's ex-wife, Father's father, Father and Mother, the trial judge astutely observed that "I haven't heard, not one thing, not one iota, not one single thing that has changed before the Permanent Parenting Plan or since. An on-again off-again relationship characterized by domestic violence and harassment and bad words and disagreements."[5]  He found that Mother's granting of more time to Father than the parenting plan required was not a material change, but rather an exercise of parental cooperation, which should be encouraged and not penalized.[6]  He also found that Father failed to prove that Mother's medications affected her ability to parent and that Father's testimony about various incidents was more conclusory than substantive.

We have carefully reviewed the record and do not find that the evidence preponderates against the trial court's ruling.  Therefore, we affirm.

Costs of appeal are assessed against Father, for which execution may issue if necessary.


_____
ANDY D. BENNETT, JUDGE

---

[5]The trial judge did compliment Father's attorney, saying: "And to be honest with you, so far you've, in my estimation, you've done an admirable job of trying to make gold out of lead, but it's still lead."

[6]The same would appear to be true for Mother's agreement to alter the weekday visitation days so Father could attend the Tuesday night horse sale.