# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 15, 2013 Session

## ELIZABETH TIMMONS AUSTIN v. BENJAMIN HOLT GRAY

### Appeal from the Circuit Court for Davidson County
No. 06D63    Phillip R. Robinson, Judge

---

### No. M2013-00708-COA-R3-CV - Filed December 18, 2013

---

This appeal arises from the modification of a parenting plan in a post-divorce action. In the initial Permanent Parenting Plan, Mother was designated the primary residential parent of their son. Four years later, Father filed a Petition to Modify the Parenting Plan, alleging that multiple material changes in circumstances had occurred and that it was in the child's best interest for Father to be the primary residential parent. While the petition was pending, Mother was involuntarily committed to a psychiatric facility; immediately thereafter, on Father's pendente lite motion, the trial court designated Father as primary residential parent with sole decision-making authority pending further adjudication. Father then amended his Petition to enumerate additional material changes. Some eight months later, the trial court conducted a trial. The court found that Mother's mental health, Mother's attitude and untoward actions directed at Father, the child's manipulation and power struggles with his parents; the child's enrollment in an out-of-state boarding school, and multiple other factors demonstrated that a material change in circumstances had occurred and that it was in their son's best interest for Father to serve as the primary residential parent with sole decision-making authority. Mother appeals claiming the trial court erred in determining that a material change in circumstances existed and that a modification was in the child's best interest. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Jerrold L. Becker, Knoxville, Tennessee, for the appellant, Elizabeth Timmons Austin.

Rebecca K. McKelvey and Gregory D. Smith, Nashville, Tennessee, for the appellee, Benjamin Holt Gray.

**OPINION**

Elizabeth Timmons Austin ("Mother") and Benjamin Holt Gray ("Father") were divorced on September 11, 2007, on the grounds of irreconcilable differences. At the time of the divorce, they had one minor child, a son born in October 1995. The 2007 divorce decree incorporated an Agreed Permanent Parenting Plan wherein Mother was designated the primary residential parent of their eleven-year-old son; Father received parenting time of 130 days a year; Father was ordered to pay child support; and Mother and Father shared joint decision-making authority.

Thereafter, Mother and Father's interactions with one another and attempts to co-parent their son became increasingly acrimonious. This was due in part to Mother's overt bitterness against Father, her declining mental and emotional health, and that their child, who has attention deficit hyperactivity disorder ("ADHD"), was acting out in an ever increasing fashion.

The child started visiting a local psychiatrist in 2008 when he was twelve; while under psychiatric care, his ADHD was well-managed. Additionally, the child regularly met with this psychiatrist, both alone and in the company of his parents, for concerns including unresolved anger over his parents' divorce. The psychiatrist observed over time that the child's healthy growth and development was triangulated to his detriment in his parents' ongoing conflicts.

Mother, who has a history of depression, sought treatment from a psychiatrist in March 2009, who subsequently diagnosed her with recurrent major depression and difficulties with anxiety. She also began seeing a counselor for individual therapy in late 2010. The psychiatrist attempted various antidepressant medications, unfortunately, Mother only demonstrated intermittent improvement. In December 2010, Mother began showing symptoms of mania, and within a matter of weeks, her psychiatrist changed her diagnosis to bipolar disorder.

In March 2011, the child, who was then fifteen years old, had a falling out with Mother, and moved in with Father with what seemed to be his mother's blessing. The agreement that the child would live with Father was short-lived; he voluntarily returned to live with Mother in late April 2011. While the child was residing with Father, Father filed a Petition to Modify the Parenting Plan, alleging that substantial and material changes in circumstances existed and that it was in the child's best interest to award Father permanent

-2-

primary residential parent and sole decision-making authority. Mother timely filed a response in opposition.

Over the ensuing months, the parents were unsuccessful in resuming their respective roles under the parenting plan. Their son engaged in various examples of acting-out behavior; the minutia of which this court has reviewed, but which we decline to discuss in detail out of deference to his age and confidentiality. During this period, Mother also was struggling to accept the diagnosis that she was bipolar and resisted her psychiatrist's efforts to modify her medication.

At a routine hearing on July 9, 2011, the trial court became concerned that the child was having thoughts of harming himself or others. This came to the court's attention when Mother's counsel informed the court that she had taped interviews of the child wherein the child made statements to this effect; statements the child later denied. The court immediately suspended Father's parenting time and also ordered forensic evaluation of the child by a neuropsychologist to provide parenting plan recommendations that were in the child's best interest. Mother and Father were ordered to cooperate in the evaluation. Father cooperated; however, Mother failed to cooperate and refused to provide access to her psychiatric and medical records. Mother also made bizarre telephone calls to the neuropsychologist and expressed beliefs that Father was plotting to kill her and booby-trap her vehicle. Within the month, Mother suffered a mental breakdown and was involuntarily confined for eight days to a psychiatric facility.

Following Mother's hospitalization, Father filed a motion to obtain pendente lite primary care for the child and sole decision-making authority; a specially-set hearing was conducted on September 12, 2011. At the hearing, the court-appointed neuropsychologist testified regarding his parenting plan recommendations and his specific recommendation that immediate intervention was necessary for the child's welfare. The trial court entered two orders following this hearing, the substance of which designated Father as the primary residential parent and sole decision-maker on a temporary basis, pending further adjudication. The trial court emphasized that Father's decision-making authority included decisions related to education and healthcare. The court also found it was not in the child's best interest for Mother to have any parenting time until further ordered; thus, her parenting time was temporarily suspended.[1]

Acting upon the recommendation of the court-appointed neuropsychologist, Father immediately enrolled the child in a therapeutic wilderness program where he stayed from

---

[1] Mother was later allowed monitored phone calls with the child. In April 2012, Mother was granted a two-hour supervised visit with the child at his boarding school.

September 2011 to December 2011. Upon completion of the wilderness program, Father enrolled the child in a boarding school in Virginia, where he remained at the time of trial.[2]

On March 14, 2012, Father filed an Amended Petition to Modify the Parenting Plan. A four-day trial ensued in May 2012 on Father's Petition, during which testimony was heard from multiple witnesses including Mother, Father, the child's past and current counselors, his former psychiatrist, the court's forensic evaluator, and Mother's treating psychiatrist and counselor. Testimony was also elicited from witnesses at both of the private high schools the child attended. The child, who was then sixteen years old and had not lived with either parent since September 2011, did not testify; his custody preference, if any, was not presented to the court.

An Order Modifying Parenting Plan was entered on August 9, 2012, pursuant to which the court found there had been material changes of circumstance that affected the child's best interest and that it was in the child's best interest for Father to be the primary residential parent with sole responsibility for making major decisions. The trial court addressed the relevant statutory factors as to the child's best interest in a very detailed manner finding that both parents were loving and affectionate, but that all of the relevant statutory factors favored Father or were equal. The court acknowledged that Mother's mental health had notably improved since her 2011 hospitalization; nevertheless, the court found that she was still engaging in overt acts of bitterness and anger toward Father which impeded her ability to successfully parent, offer a stable environment, and were a burden on the child.

The August 2012 order was not a final judgment due to the fact the court was awaiting the input of a court-appointed Rule 35 expert as to the extent and manner of Mother's access and parenting time. After receiving the expert's findings and recommendations, an agreed order regarding visitation was entered on February 14, 2013, which finalized all issues. This appeal followed.

On appeal, Mother contends the trial court erred in finding material changes in circumstances sufficient to warrant a change of the primary residential parent. She also contends the court "erred in engaging in the best interests analysis of the parent-child relationships between the parties and the minor child."

---

[2]This court has "long recognized the difficulties trial courts have in domestic cases - the near-impossible job of trying to deal with broken relationships while protecting the children of the marriage and preserving the respective rights of the parents." *Hogue v. Hogue*, 147 S.W. 3d 245, 252 (Tenn. Ct. App. 2004). The unique facts of this case, particularly the necessity for the child to reside somewhere other than either parent's home since September 2011, is a perfect example of this difficulty.

**ANALYSIS**

The 2007 final judgment that established the parties' existing parenting plan is res judicata on the facts as they existed at that time. *See Rigsby v. Edmonds*, 395 S.W.3d 728, 735 (Tenn. Ct. App. 2012) (citing *Steen v. Steen*, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001)). However, when presented with a petition to modify the existing parenting plan, our courts are statutorily authorized to modify such plans as necessitated by intervening changes in circumstances and may make changes in the parenting plan as the exigencies of the case now require. *Steen*, 61 S.W.3d at 327 (citing *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 Tenn. Ct. App. 1997)).

The statute governing the modification of an existing parenting plan as it pertains to custody of a minor is Tennessee Code Annotated § 36-6-101(a)(2)(B)(2010). A petition to change the primary residential parent invokes a two-step analysis, *Cranston v. Combs*, 106 S.W. 3d 641, 644 (Tenn. 2003), and the petitioner bears the burden of proof in each step. *Hoalcraft v. Smithson*, 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999) (citing *Geiger v. Boyle*, No. 01A01-9809-CH-00467, 1999 WL 499733 at *3 (Tenn. Ct. App. July 16, 1999)). First, the petitioner must prove by a preponderance of the evidence that a material change of circumstances has occurred. *See* Tenn. Code Ann. § 36-6-101(a)(2)(B); *Kendrick v. Shoemake*, 90 S.W.3d 566, 568 (Tenn. 2002). Second, the petitioner must show that a change of custody is in the child's best interests. *Id*.

Mother contends that the evidence at trial was insufficient to establish a material change of circumstances sufficient to change the primary residential parent; therefore, we turn our attention to this threshold issue.

## I. MATERIAL CHANGE OF CIRCUMSTANCE

Tennessee Code Annotated § 36-6-101(a)(2)(B) identifies what constitutes a material change of circumstances in the context of a petition to change the primary residential parent:

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

Although there are no bright-line rules for determining when such a change has occurred, there are several relevant considerations: (1) whether a change has occurred after the entry of the order sought to be modified; (2) whether a change was not known or reasonably anticipated when the order was entered; and (3) whether a change is one that affects the child's well-being in a meaningful way.[3] *Cranston*, 106 S.W.3d at 644 (citing *Kendrick*, 90 S.W.3d at 570; *Blair v. Badenhope*, 77 S.W. 3d 137, 150 (Tenn. 2002)).

In its well-reasoned and detailed memorandum opinion, the trial court found that Father proved a host of material changes of circumstance. These included the fact that co-parenting eroded after the divorce with respect to scheduling of parenting time, overall cooperation, and joint decision-making on their son's behalf. The neuropsychologist found that Mother had "essentially alienated" their son's affections to Father to a significant degree. This conclusion was supported by evidence that Mother believed Father was not parenting well, was "evil," and that Father was cruel and verbally abusive to their son; a position which was patently unsubstantiated. The evidence also showed that Mother faulted Father for any problems in her own relationship with their son, and communicated this to the child. This was consistent with the court-appointed evaluator's finding that Mother was preoccupied with identifying herself as a victim.

The trial court concluded that the above facts, and many others we have not identified, occurred after the entry of the order to be modified, that they constituted changes that were not known or reasonably anticipated when the prior order was entered, and the changes affected the child's well-being in a meaningful way. Mother, however, contends the trial court's conclusions are based on an erroneous emphasis of her mental and emotional problems and that her behavior or mental health issues were insufficient to justify a change of custody.

---

[3]The Supreme Court recently explained in *Armbrister* that it is no longer mandatory for the parent seeking modification of a residential parenting *schedule* under subsection (a)(2)(C) of Tennessee Code Annotated § 36-6-101, to show that the material change in circumstances could not reasonably have been anticipated when the residential parenting plan was originally established. *Armbrister v. Armbrister*, __ S.W.3d __, No. E2012-00018-SC-R11-CV, 2013 WL 5688775 at *13 (Tenn. Oct. 21, 2013). When determining whether an alleged material change in circumstances had been established, inquiring whether the facts or circumstances reasonably could have been anticipated at the time of the initial custody decree was articulated as merely one factor in the analysis; this single factor was never intended to be outcome-determinative. *Id.* at *14 (citing *Blair*, 77 S.W.3d at 150; *Kendrick*, 90 S.W.3d at 570; *Cranston*, 106 S.W.3d at 644; *see also Boyer v. Heimermann*, 238 S.W.3d 249 at 256 (Tenn. Ct. App. 2013)). The *Armbrister* holding, however, does not apply to modification of the primary residential *parent* under subsection (a)(2)(B) of Tennessee Code Annotated § 36-6-101, which pertains to change of residential parent, for the two subsections are different following the 2004 amendment discussed in *Armbrister*.

Mother specifically points to *Kellett v. Stuart*, 206 S.W. 3d 8 (Tenn. Ct. App. 2006), in which the mother was the primary residential parent of the parties' three daughters, and the father was the primary residential parent for their son. *Id*. at 10. In *Kellett*, the father filed a petition seeking primary residential custody of their three daughters after the mother moved to North Carolina, and after she exhibited severe emotional difficulties leading to inpatient treatment; the father subsequently obtained temporary custody. *Id*. at 10-11. During their marriage, the mother had several episodes relating to her bipolar disorder that required hospitalizations of one to two months. *Id*. at 15-16. A psychological evaluation of the parents and children concluded that "neither parent nor their spouse posed any sort of threat to the children." *Id*. at 13. The trial court's bench ruling observed that both parents had health issues that were considered in its decision "as it may relate to the children;" that the father was aware of the mother's ongoing problems with her mental health when he originally agreed she should have custody; and there was evidence that the children "were doing just fine" before the temporary change in custody. *Id*. at 13-14. As a result, the trial court declined to find a material change of circumstances had occurred. *Id*. On appeal, the father's primary argument was that the mother's bipolar disorder and her most recent two-week hospitalization constituted material changes in circumstances. *Id*. at 15. Ultimately, we concluded that the above facts, without more, were not enough to constitute a material change of circumstances and affirmed the trial court. *Id*. at 15-16. We, however, find the facts in *Kellett* distinguishable from the present case.

Unlike *Kellett*, where the child was "doing just fine," *id*. at 13-14, the court-appointed expert recommended immediate intervention for the child's welfare. Also unlike *Kellett*, where the mother was able to properly parent her children in spite of her illness, *id*., the expert recommended that Mother's visitation be supervised, which status continued up to, and including, the time of trial. These material facts distinguish this case from *Kellett*.

Mother also relies on *Agee v. Agee*, No. W2007-00314-COA-R3-CV, 2008 WL 2065996 at *6 (Tenn. Ct. App. May 16, 2008) and *McCain v. Grim*, No. 01A01-CH-00634, 1999 WL 820216 at *2 (Tenn. Ct. App. October 15, 1999) to contend that the critical inquiry for this court is whether the material change in circumstances is a change in the child's circumstances, not the circumstances of either or both of the parents. This misstates the standards by which we are constrained to evaluate material change of circumstances. To find a material change of circumstances is not as broadly conditioned on whether the change is that of the parents or of the children as Mother asks us to find. Parental health changes, remarriage, and other changes in the parents' lives may, under the dependent facts of a particular case, constitute a material change of circumstances that effect the child. This concept is inextricably intertwined with our inquiries as to whether a change of circumstances has impacted the child's well-being in a meaningful way.

Mother also insists the record is devoid of proof that her hostility towards Father, mental health issues, and subsequent confinement in a psychiatric hospital had any meaningful effect on her son. We find this argument ignores a wealth of evidence in this record. The court-ordered evaluator interviewed Father, Mother, and the child, and also administered a series of psychological tests. He testified that Mother supported her son in a very unhealthy way, that the child was in fact engaging in problematic behavior, and that Mother encouraged the child's anger and alienation towards Father. He concluded that the child's situation required urgent, intensive intervention, that Mother was in no state to exercise her parental duties, and recommended supervised visitation. The evidence also showed that the child's treating psychiatrist was concerned during the summer of 2011 over his patient's gradually declining mental health, and pointedly noted that the minor was acting out, and that "de-triangulating" him was of "utmost importance to his mental health."

Custody decisions often hinge on subtle factors, such as the parents' demeanor and credibility during the proceedings, *see Adelsperger*, 970 S.W. 2d at 485-86, and the credibility of witnesses is a matter peculiarly within the sovereign realm of the trial court. *See Bowman v. Bowman*, 836 S.W. 2d 563, 567 (Tenn. Ct. App. 1991). Moreover, a trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interest are factual questions. *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). Our review of a trial court's findings of fact is de novo with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Kendrick*, 90 S.W. 3d at 570; *Marlow v. Parkinson*, 236 S.W.3d 744, 748 (Tenn. Ct. App. 2007). Thus, we presume that a trial court's factual findings are correct and we will not overturn them, unless the evidence preponderates against the trial court's findings. *Id*. For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *See Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000).

After applying the foregoing standards as we reviewed the record, we conclude the proof does not preponderate against the trial court's findings that Father established a material change in circumstances; to the contrary, the evidence fully supports those findings. The child's well-being was impacted by his mother's animosity, mental health issues, and the triangulation between his parents; facts that could not have been reasonably contemplated when the initial parenting plan went into effect. Although Mother has shown improvement in her overall mental health, the facts and circumstances leading up to and the child's actual matriculation to boarding school sufficiently establish a material change of circumstances which impacted the child in a meaningful way.[4]

---

[4]Mother contends it was unnecessary for the child to go away to school, and she further contends the trial court erred in permitting this. We note, however, the orders that temporarily designated Father as the
(continued...)

For the foregoing reasons, we affirm the trial court's determination that a material change of circumstance was proven by a preponderance of the evidence.

## II. BEST INTEREST OF THE CHILD

"A finding that a material change of circumstances has occurred does not predetermine the outcome of the best interest analysis and does not require that a change of custody or visitation be made." *Scoggins v. Scoggins*, No. M2007-02148-COA-R3-CV, 2008 WL 2648966 at *5 (Tenn. Ct. App. July 2, 2008). The factors to be considered in making a best interests analysis are set forth in Tennessee Code Annotated § 36-6-106(a) (2010). The trial court, in its comparative analysis, may find that the factors favor one parent over the other or neither. *See e.g. Gregory v. Gregory*, No. W2002-01049-COA-R3-CV, 2003 WL 21729431 at *3-4. The trial court found in a detailed, on-point analysis, that half of the factors favored Father, and significantly, none of the factors favored Mother.

In examining the statutory factors, we similarly find that none of the factors favor Mother. We agree that Mother's defamatory comments and negative attitude toward Father were relayed to their son in both her thoughts and deeds. We recognize that Mother was the primary caregiver of the child until the events of 2011, but the evidence fully supports she had not done so successfully, and that her abilities are impaired by both her overt bitterness and emotional issues. We further recognize that the child made poor choices and manipulated his parents, and the evidence shows he was ill-equipped to deal with these issues. Although Mother's mental health has improved, in view of these facts, we likewise find that Father's health, along with his past and potential for future performance of his parenting responsibilities, favor Father.

As noted earlier, a trial court's determination of whether modification of a parenting plan serves a child's best interest is a factual issue, *In re T.C.D.*, 261 S.W.3d at 742, and we review the trial court's findings of fact with a presumption of correctness, unless the evidence preponderates otherwise, Tennessee Rule of Appellate Procedure 13(d), and the evidence in this record does not preponderate against the trial court's findings of fact. We, therefore, affirm the trial court's findings that it is in the best interest of the child for Father to be the primary residential parent.

---

[4](...continued)
primary residential parent and which gave him sole decision-making authority regarding education expressly contemplated that the child might attend boarding school. Although Mother was represented by counsel at the hearing, we find nothing in the record to indicate that Mother filed a written objection to challenge the fact the child had been enrolled in the Virginia boarding school or to require her son's return to the Nashville area.

### III. Issues Raised by Father

Father raised two issues for our review; however, we have determined that these issues are pretermitted by the above rulings.

### In Conclusion

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Mother, Elizabeth Timmons Austin.

_____
FRANK G. CLEMENT, JR., JUDGE