IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 20, 2024 Session

## CYNTHIA EVANS v. ROBERT DAVID DERRICK

**Appeal from the Juvenile Court for Cheatham County**
**No. 2022-391        Lesli Oliver Wright, Magistrate**
_____

**No. M2023-01550-COA-R3-JV**
_____

Father appeals the trial court's award of grandparent visitation to the child's maternal grandmother. Although we affirm the trial court's determination that an award of grandparent visitation is warranted, we vacate the visitation schedule set by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed in Part, Vacated in Part, and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W. S., and ARNOLD B. GOLDIN, J., joined.

Shannon L. Crutcher, Brentwood, Tennessee, for the appellant, Robert David Derrick.

Radford H. Dimmick, Nashville, Tennessee, for the appellee, Cynthia Evans.

## OPINION

### I. Factual and Procedural History

This case involves a petition for grandparent visitation. The relevant facts are undisputed. Appellant Robert David Derrick ("Father") is the biological parent of the child (d.o.b. July 2008) at issue in this case. Father and the child's mother ("Mother") were never married. Mother suffered from severe Crohn's disease, and she and the child lived with the maternal grandmother ("Grandmother," or "Appellee") at Grandmother's home. When he reached school age, the child attended the school where Grandmother worked and traveled to and from school with her. Mother died in January 2016, and the child

continued to live with Grandmother during the school week until the end of the school year. Since late May 2016, the child has lived primarily with Father.[1]

Although they disagree on the specific schedule, Father and Grandmother agree that, for three years following Mother's death, Grandmother had visitation with the child every Thursday evening, alternate weekends, and sporadic additional days during the school week. In 2019, at the end of his third-grade year, Father transferred the child to another school and reduced the child's visitation time with Grandmother. During the COVID-19 pandemic, Grandmother resided at the home of the child's maternal aunt ("Aunt") for several months, and any visitation occurred at Aunt's home thereafter.

In September 2022, Grandmother filed a petition for visitation in the Juvenile Court for Cheatham County ("trial court"). In her petition, Grandmother asserted that Father had severed or severely reduced her visitation time with the child. She asserted that the severe reduction of the child's visit with Grandmother was likely to cause substantial emotional harm to the child, and "it would be in the best interests of [the child] to have visitation with [Grandmother] on a week-to-week basis with [Grandmother] and Father exchanging [the child] on Sundays at 6 pm, and alternating major holidays." In his October 2022 answer, Father asserted that the child preferred visitation to occur at Aunt's home and that no more than 90 days had elapsed between visits. He further asserted that the current visitation schedule was sufficient for the child's well-being and objected to Grandmother's request for week-to-week visitation on the basis that it "would obstruct his [s]uperior [p]arental [r]ights."

Following unsuccessful mediation in January 2023, the trial court heard the matter in August 2023. By order of September 19, 2023, the trial court found that: (1) Father had actively opposed Grandmother's visitation by severely reducing visitation between Grandmother and the child; (2) removal of the child's relationship with Grandmother would cause substantial harm to the child; and (3) Grandmother had "functioned as the primary caregiver for [the child] during the life of his [M]other up until her death in January of 2016." The trial court noted Father's testimony that he harbored anger against Grandmother and Mother due to their limiting his visits with the child prior to Mother's death. The trial court further cited the child's testimony that "not being allowed to see his Maternal Grandmother affected his overall happiness." Additionally, the trial court noted the child's testimony that, when Grandmother asked to see the child, Father would tell Grandmother that he had plans with the child but "did not follow through on those plans."

---

[1] It is undisputed that Mother and Father did not agree on a visitation schedule, and Father took no steps to establish a parenting plan. The extent of Father's parenting time with the child prior to Mother's death is not clear from the record. At trial, Father testified that the child spent every weekend with Father from the time the child was born until Mother's death. However, in his deposition, Father acknowledged that Mother did not allow him to see the child regularly until 2015. Father stated that, prior to 2015, he "rarely saw [the child] because his Mother wouldn't let me." He also acknowledged that he did not file a petition for visitation.

The trial court found that the child "is a sufficiently mature witness and expressed that he desired to have alternating one week visitation with his Maternal Grandmother and alternating one week stays with his Father."   The trial court granted Grandmother visitation: (1) "every other weekend from Thursday after school (or 3 pm if there is no school in session) until Monday for the return to school (or 8 am if there is no school in session)"; (2) one week in June and one week in July "consecutive to and immediately following one of her alternating weekends" and not to include the week of the child's birthday; (3) Mother's Day weekend; and (4) the weekends before Thanksgiving Day and Christmas Day from Thursday after school (or 3:00 pm) until return to school (or 8:00 ) on Monday.   Father filed a motion to alter or amend, which the trial court denied.  Father appeals.

## II.  Issues

Father presents the following issues for review, as stated in his appellate brief:

I. Whether the trial court abused its discretion in finding that Father opposed Grandmother having visitation with the minor child prior to the filing of the Petition.

II. Whether the trial court abused its discretion by awarding an excessive and/or unreasonable amount of grandparent visitation akin to what an alternate residential parent would receive.

## III. Standard of Review

This case was tried without a jury. Accordingly, under Tennessee Rule of Appellate Procedure 13(d), we review of the trial court's findings of fact *de novo* upon the record with a presumption of correctness unless the evidence preponderates otherwise. *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 512 (Tenn. 2012).  The evidence preponderates against a trial court's factual finding when it supports another finding "with greater convincing effect." *Hardeman Cnty. v. McIntyre*, 420 S.W.3d 742, 749 (Tenn. Ct. App. 2013) (citation omitted).  Therefore, the trial court's findings of fact must contain sufficient underlying facts to clearly disclose the basis of the trial court's determinations. *Lovelace v. Coley*, 418 S.W.3d 1, 34 (Tenn. 2013) (citations omitted).  Because "'trial courts are able to observe witnesses as they testify and to assess their demeanor,'" trial judges are best situated to evaluate witness credibility. *Geller v. Henry Cnty. Bd. Of Educ.*, 602 S.W.3d 876, 889 (Tenn. 2020) (quoting *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999)).  Therefore, we will not disturb a trial court's findings based on witness credibility without clear and convincing evidence to the contrary. *Dog House Invs., LLC v. Teal Props., Inc.*, 448 S.W.3d 905, 912 (Tenn. Ct. App. 2014) (citation omitted).  However, we review a trial court's conclusions of law *de novo* with no presumption of correctness. *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012).

# IV. Analysis

Tennessee Code Annotated sections 36-6-306 and 36-6-307 govern grandparent visitation rights in Tennessee. Section 36-6-306 establishes the circumstances under which a court may consider a grandparent's petition for visitation and provides that the grandparent must demonstrate that: (1) their grandchild's custodial parent(s) opposed or severely reduced their visitation with the grandchild; (2) the cessation or severe reduction of the visitation is likely to cause substantial emotional harm to the child; and (3) grandparent visitation is in the best interest of the child based on the factors set out in section 36-6-307. Here, the trial court's findings regarding the likelihood of substantial harm to the child and its best-interest analysis are not disputed as neither party raises an issue concerning same. Rather, Father submits that, under section 36-3-306(a), the trial court erred in determining that he opposed Grandmother's visitation with the child. Father also argues that the trial court's visitation award is excessive and violates his superior parental rights. We turn first to review the trial court's finding that Father opposed or severely reduced Grandmother's visitation with the child.

## A. Tennessee Code Annotated section 36-6-306(a)

Father contends that, under section 36-6-306(a), the trial court erred in finding that he opposed Grandmother's visitation. He relies on ***Uselton v. Walton***, No. M2012-02333-COA-R3-CV, 2013 WL 3227608 (Tenn. Ct. App. June 21, 2013), in support of his argument that the grandparent visitation statute is not implicated unless the grandparent can establish that the visitation was opposed by the custodial parent before the petition for grandparent visitation was filed. Father argues that he neither opposed nor denied visitation and submits that "[n]ot allowing a grandparent visitation whenever they want it does not amount to a finding that visitation was opposed." Father asserts that it is within his Constitutional rights as the child's parent to "put in place reasonable limitations to frequency and location[]" of Grandmother's visits, and "Grandmother does not have and should not be afforded the same rights as a parent." Father further submits that, "While visitation was not as frequent as Grandmother had become accustomed to, or at the location she may have desired, it was not opposed or denied."

Grandmother argues that Father's reliance on ***Uselton*** is misplaced because ***Uselton*** was decided under an earlier version of the statute. She contends that the trial court did not err under the current amended statute because it correctly found that Father severely reduced visitation between Grandmother and the child. As Grandmother asserts, Tennessee Code Annotated section 36-6-306(a), as amended effective May 2016, provides, in relevant part:

> (a) Any of the following circumstances, when presented in a petition for grandparent visitation to the circuit, chancery, general sessions courts with domestic relations jurisdiction, other courts with domestic relations

jurisdiction or juvenile court in matters involving children born out of wedlock of the county in which the petitioned child currently resides, necessitates a hearing if such grandparent visitation is opposed by the custodial parent or parents or custodian *or if the grandparent visitation has been severely reduced by the custodial parent* or parents or custodian:

(1) The father or mother of an unmarried minor child is deceased[.]

***

(5) The child resided in the home of the grandparent for a period of twelve (12) months or more and was subsequently removed from the home by the parent, parents, or custodian (this grandparent-grandchild relationship establishes a rebuttable presumption that denial of visitation may result in irreparable harm to the child); or

(6) The child and the grandparent maintained a significant existing relationship for a period of twelve (12) months or more immediately preceding severance *or severe reduction* of the relationship, this relationship was severed *or severely reduced* by the parent, parents, or custodian for reasons other than abuse or presence of a danger of substantial harm to the child, and severance *or severe reduction* of this relationship is likely to occasion substantial emotional harm to the child.

Tenn. Code Ann. § 36-6-306(a) (emphases added).[2]  As we have observed, under the statute as amended after *Uselton* was decided, a petitioner must demonstrate either opposition to *or severe reduction in visitation* before the trial court may engage in the substantial harm analysis mandated by section 36-6-306(b).  *Rose v. Malone*, No. M2021-00569-COA-R3-CV, 2022 WL 2914644, at *5 (Tenn. Ct. App. July 25, 2002); *In re Trinity P.*, No. M2020-01481-COA-R3-JV, 2021 WL 5816456, at *3 (Tenn. Ct. App. Dec. 8, 2021); *Morisch v. Maenner*, No. W2020-00362-COA-R3-JV, 2021 WL 1102364, at *3 (Tenn. Ct. App. Mar. 23, 2021); *Clark v. Johnson*, No. E2017-01286-COA-R3-CV, 2018 WL 2411203, at *3 (Tenn Ct. App. May 29, 2018).  The statute defines "severe reduction" or "severely reduced" as "reduction to no contact or token visitation as defined in § 36-1-102."  Tenn. Code Ann. § 36-6-306(f).

In its September 2023 order, the trial court found that Father opposed visitation "in that he *severely reduced visitation* between the Maternal Grandmother and [the child.]" (emphasis added). The trial court also found that "Father testified that he had cut off communication[] and stated that he had no desire to speak to the Maternal Grandmother

---

[2] Amendments to the statute effective April 2024 do not alter this provision.

before the filing of the petition." The trial court found Grandmother's testimony to be credible and determined that "Grandmother acted reasonably by trying to reach out to the Father before the filing of the petition." As noted above, the trial court also credited the child's testimony regarding occasions on which Father would not allow the child to see Grandmother based on non-existent plans.

In his brief, Father does not contend that the evidence preponderates against the trial court's findings with respect to whether he severely reduced Grandmother's visitation.[3] Rather, he asserts that he did not "oppose" visitation and submits that, in 2021 and 2022, "the child spent over 30 days throughout the year with the maternal family." Father argues that the child's visitation at Aunt's home was sufficient visitation with the child's "maternal family." We note that the statute provides for "grandparent" visitation and does not contemplate visitation with any other relatives. Also, Father's argument with respect to this threshold issue is based on a prior, inapplicable version of section 36-6-306, and Father does not address the 2016 statutory amendments.

From our review, Father's testimony was inconsistent. Father testified that the child's visitation with Grandmother "was fairly consistent until 2020" but sporadic and unscheduled thereafter. Father also testified that the child's visitation with Grandmother had "been the same thing since the beginning of [Mother's] passing[.]" However, he acknowledged that, before Grandmother filed her petition, he reduced visitation, which had been occurring "some Wednesdays," overnight every Thursday, and alternate weekends from Thursday to Monday, to alternate weekends. Father explained that he later eliminated alternate weekend visits and ultimately allowed only sporadic, unscheduled visits at Aunt's home with only an hour or two notice and without knowing whether Grandmother was present. Father also acknowledged that Grandmother texted him asking to see the child. Father conceded that he ceased communication with Grandmother well before she filed her petition. He stated: "I would give an hour or two notice [by text]. 'You can come pick him up at a certain time.' And I would get a response back with 'Okay.'" Although Father testified that he did not "oppose" visitation, he acknowledged that unreliable and inconsistent visitation after 2020 had not been "helpful" for the child.

The trial court's determination that Father severely reduced the child's visits with Grandmother is also supported by the child's testimony. He testified that Father sometimes

---

[3] Father also: (1) does not argue that Grandmother failed to demonstrate additional criteria required by the statute; (2) does not appeal the trial court's finding that cessation or severe reduction of visitation with Grandmother would result in substantial harm to the child; and (3) acknowledges that visitation with Grandmother is in the child's best interest. Additionally, Father does not raise an issue concerning whether the undisputed reduction in visitation constitutes a "severe reduction" under the statute. "Appellate review is generally limited to the issues that have been presented for review." *Hodge v. Craig*, 382 S.W.3d 325, 334 (Tenn. 2012) (citing Tenn. R. App. P. 13(b)); *State v. Bledsoe*, 226 S.W.3d 349, 353 (Tenn. 2007). Accordingly, we will not discuss those criteria here.

withdrew permission to visit. He stated, "there [were] occasions where [Father] would tell them that we had plans. And they asked me, and I would be confused because we didn't go anywhere and didn't do anything." The child testified that Father had simply "lied" and stated, "He would tell them that we had weddings and funerals and birthday parties to go to, but there [weren't] any."

From our review, we conclude that the evidence does not preponderate against the trial court's finding that Father severely reduced Grandmother's visitation with the child. We now turn to review whether the amount of visitation awarded to Grandmother is unreasonable.

## B. Visitation Award

Father argues that the trial court's award of grandparent visitation was excessive or unreasonable. He contends that the trial court "treated this dispute like that of a dispute between two parents." Again, Father relies on *Uselton* for the proposition that the court erroneously "awarded Grandmother what is essentially an alternate residential parent's schedule," thereby infringing his Constitutional rights as a parent. Although Father concedes that visitation with Grandmother is in the child's best interest, he asserts that the trial court's award of 115 days per year to Grandmother was unreasonable and excessive.

 Grandmother contends that the trial court did not abuse its discretion in fashioning visitation. She asserts that Father "indicated" that the amount of visitation was "reasonable" because he "at one time agreed to it[.]" Grandmother argues that the trial court did not grant her all the visitation she requested but established a reasonable visitation schedule based on the parties' pre-2019 arrangement. She also submits that Father's reliance on *Uselton* is misplaced under the amended statute.

As an initial matter, we note that, although the 2016 amendments to section 36-6-306(a) extended the trial court's threshold inquiry to include instances where a grandparent's visitation is "severely reduced," the amendments do not impact our review concerning whether a grandparent visitation award is unreasonable or excessive. *See Rose*, 2022 WL 2914644, at *13.

Concerning grandparent-visitation schedules, this Court has explained that

. . . if the court determines that a grandparent is entitled to visitation, it may create a "reasonable" visitation plan. Tenn. Code Ann. § 36-6-306(c). However, Tenn. Code Ann. § 36-6-306 does not define "reasonable," nor does it guide the court in the form of factors to consider when creating a "reasonable" visitation schedule. Nevertheless, "[g]randparent visitation statutes must be narrowly construed in order to comport with the state and federal constitutions, because they are in derogation of the parents'

- 7 -

fundamental constitutional rights." ***Spears v. Weatherall***, 385 S.W.3d 547, 550 (Tenn. Ct. App. 2012). Therefore, to define "reasonable" under the statute, we must determine the level of visitation permissible under the state and federal constitutions.

"[P]arental rights constitute a fundamental liberty interest under Article I, Section 8 of the Tennessee Constitution," ***Hawk v. Hawk***, 855 S.W.2d 573, 579 (Tenn. 1993), and under the Fifth and Fourteenth Amendments to the United States Constitution. ***Troxel v. Granville***, 530 U.S. 57, 65 (2000). Under both the state and federal constitutions, parents have the freedom to make decisions regarding the care and custody of their children without state interference. ***Hawk***, 855 S.W.2d at 579; ***Troxel***, 530 U.S. at 66. For a state to intervene in the parent-child relationship, the Tennessee Constitution requires a compelling justification. ***Hawk***, 855 S.W.2d at 580. Accordingly, Tenn. Code Ann. § 36-6-306(b)(1) provides that a court must first determine that "cessation or severe reduction of the relationship" between a grandparent and child will cause the child "substantial harm" before ordering visitation against a parent's wishes.

Once . . . the court determines that visitation is in the child's best interest . . . the court is tasked with creating a visitation plan that advances the state's compelling interest in minimizing harm to the child. *See* Tenn. Code Ann. § 36-6-306(c). However, because parental rights are fundamental rights, the plan must be narrowly tailored to achieve the state's objective. *See* ***City of Memphis v. Hargett***, 414 S.W.3d 88, 102 (Tenn. 2013). Therefore, a "reasonable" grandparent visitation plan is one that is "carefully crafted both to afford grandparents the visitation necessary to avoid substantial harm to the child and to minimize, to the extent possible, interference with the parent-child relationship." ***Lovlace v. Copely***, 418 S.W.3d 1, 31 (Tenn. 2013) (emphasis added). The level of visitation necessary to minimize harm is dependent on the unique facts of each case. *See* ***In re Dayton R.***, No. W2015-01848-COA-R3-JV, 2016 WL 1403255, at *7 (Tenn. Ct. App. Apr. 7, 2016).

***In re Diawn B.***, No. M2017-01159-COA-R3-JV, 2018 WL 3530838, at *3-*4 (Tenn. Ct. App. July 23, 2018); *accord* ***Rose***, 2022 WL 2914644.

We review a trial court's visitation order under the abuse of discretion standard, giving "'the child's welfare paramount consideration.'" ***Rose***, 2022 WL 2914644, at *13 (quoting ***Smallwood v. Mann***, 205 S.W.3d 358, 361 (Tenn. 2006) (citing ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001))). Application of the abuse of discretion standard recognizes "that the trial court has the authority to choose among several legally permissible, sometimes even conflicting, answers." ***Gooding v. Gooding***, 477 S.W.3d 774, 779 (Tenn. Ct. App. 2015) (citing Louis, *Allocating Adjudicative Decision Making Authority Between the Trial and Appellate Levels: A Unified View of the Scope of Review, the Judge/Jury Question, and Procedural Discretion,* 64 N.C.L.Rev. 993, 1038-39 (1986);

***Southern Fire & Cas. Co. v. Cooper****,* 200 Tenn. 283, 286, 292 S.W.2d 177, 178 (1956) (a trial court's discretion is "very wide")). "Therefore, a trial court's decision regarding . . . visitation will be set aside only when it 'falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record.'" ***Rose****,* 2022 WL 2914644, at *13 (quoting ***Marlow v. Parkinson****,* 236 S.W.3d 744, 748 (Tenn. Ct. App. 2007) (quoting ***Eldridge****,* 42 S.W.3d at 88)). Generally, we will not alter a visitation award "'in the hopes of achieving a more reasonable result than the trial court.'" ***Id.*** (quoting ***Marlow v. Parkinson****,* 236 S.W.3d 744, 748 (Tenn. Ct. App. 2007) (quoting ***Eldridge****,* 42 S.W.3d at 88)).

Here, the trial court found that Grandmother "functioned as the primary caregiver for [the child]" until the death of his Mother in 2016. The trial court also found:

> Father testified that he was angry with how [the child's] [M]other and his [G]randmother handled visitation for him before [the child's] [M]other's death, and that he allowed his anger to mold his conduct with the current situation; however, Father never sought a parenting plan for himself, so any lack of visitation in [the child's] early life was a result of his own inaction[.]

As noted above, the trial court found that the child has "strong emotional ties" to Grandmother. In its order, the court stated:

> [The child] testified that not being allowed to see his Maternal Grandmother affected his overall happiness. The [c]ourt finds [the child] is a sufficiently mature witness and expressed that he desired to have alternating one week visitation with his Maternal Grandmother and alternating one week stays with his Father.

Based on Father's testimony, the trial court further found that "for a few years following the death of the [M]other, Maternal Grandmother had visitation from Thursday to Monday every other weekend." The court noted that "[t]he testimony of the parties was that this schedule worked well until Father decided to reduce and ultimately eliminate visitation with the Maternal Grandmother[.]"

We observe that the child—who was 15 years old when Grandmother's petition was heard in August 2023—testified that he "would like to spend alternate weeks between [his] dad and [his] [G]randmother." When questioned (without objection) regarding whether Father had spoken to him about the case, the child testified that Father explained that, "[W]e're going because my Nana wants more time with me and that— but he just doesn't want to give in, and that's really all we said."

Father testified that he "came here (to trial) with a proposal, and it was denied." He stated that he was agreeable to visitation at Grandmother's home: (1) the third weekend of

every month from after school on Friday until 5:00 pm on Sunday; (2) Mother's Day weekend; (3) one week in June; (4) one week in July; and (5) the weekends before or after Thanksgiving and Christmas. He further testified that he did not oppose telephone contact between the child and Grandmother "at least once a week" and stated that Grandmother was welcome to attend the child's extracurricular activities. Father acknowledged that the child "has significant emotional ties" to Grandmother, and it is undisputed that Grandmother was the child's primary caregiver from his birth in 2008 until Mother's death in 2016.

As noted above, the trial court granted Grandmother visitation: (1) "every other weekend from Thursday after school (or 3 pm if there is no school in session) until Monday for the return to school (or 8 am if there is no school in session)"; (2) one week in June; (3) one week in July "consecutive to and immediately following one of her alternating weekends" and not to include the week of the child's birthday; (4) Mother's Day weekend; and (5) the weekends before Thanksgiving Day and Christmas Day. Notwithstanding the child's close relationship with Grandmother, we agree with Father that the trial court's grandparent visitation award is unreasonable and excessive. As Father suggests, it appears that the trial court ostensibly treated the parties' dispute as one between parents as opposed to a dispute between a parent and a grandparent. In this regard, the instant case is similar to *In re Diawn B.* where we held:

> One of the more significant legal principles to recognize before crafting grandparent visitation is that Grandmother does not stand in Father's shoes in her action for grandparent visitation. *See **Uselton v. Walton***, No. M2012-02333-COA-R3-CV, 2013 WL 3227608, at *11 (Tenn. Ct. App. June 21, 2013). A fit parent and a grandparent "do not begin on equal footing." ***Id***. (citations omitted). One relies on a fundamental constitutional right, and the other does not. ***Id***. Consequently, "the trial court may not 'start with the standard for an action between a child's parents as the baseline and tweak it . . . for . . . grandparent visitation.'" ***Id***. (citations omitted).
>
> The grandparent visitation plan at issue in this appeal is so extensive that it impermissibly interferes with Mother's fundamental constitutional rights because it is not narrowly tailored to achieve the state's objective. *See **City of Memphis [v. Hargett]***, 414 S.W.3d at 102. Moreover, it is more extensive than is reasonably necessary "to afford grandparents the visitation necessary to avoid substantial harm to the child and to minimize, to the extent possible, interference with the parent-child relationship." ***Lovlace***, 418 S.W.3d at 31. Therefore, the trial court exceeded its discretion by crafting a grandparent visitation schedule that is in conflict with Tenn. Code Ann. § 36-6-306 and constitutional restraints.

*In re Diawn B.*, 2018 WL 3530838, at *4. The same is true here. From the totality of the circumstances, the trial court exceeded its discretion by granting Grandmother an

unreasonable amount of visitation in violation of Tennessee Code Annotated section 36-6-306. Accordingly, we vacate the trial court's visitation schedule and remand for further proceedings on this issue.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's findings that Father severely reduced Grandmother's visitation and that grandparent visitation is warranted. However, we conclude that the grandparent visitation schedule established by the trial court is unreasonable. We vacate the visitation schedule and remand for further proceedings limited to establishing a visitation schedule consistent with the foregoing discussion. Costs of the appeal are assessed one-half to the Appellee, Cynthia Evans, and one-half to the Appellant, Robert David Derrick. Execution for costs may issue if necessary.

_s/ Kenny Armstrong_
KENNY ARMSTRONG, JUDGE